242963 Good morning, Mr. Cooperman. Good morning, Your Honors, and may it please the Court, my name is Jonathan Cooperman. I am here for BP Products North America, the appellant. This case should have been completely decided on summary judgment. There was no need for a jury trial in this case, and the District Court created an entirely new process in the case. Illinois law governed the parties' defense and indemnity agreement, and under Illinois law, where a complaint contains allegations within the scope of an indemnity agreement, as well as some allegations outside the scope of that agreement, an indemnitor has the duty to defend the entire lawsuit, and that's called the complete defense rule in Illinois. And that duty is triggered by the allegations of the complaint. And that complete defense rule, Your Honors, has been specifically applied in private indemnity situations. We cite it on page 25 of our brief to the Sears-Roebuck v. Insurance Company of North America case where that happened. Although the District Court cited that Sears-Roebuck case where, again, this complete defense rule was applied in a private indemnity situation, the District Court went on to rule that the complete defense rule was not The District Court instead created this entirely new process where an indemnity like BP is now required to pay the cost of defending an underlying lawsuit, and once the lawsuit is over, the indemnity is obligated to or is required to prove to a jury which of those defense costs can be reimbursed. So I guess Sears-Roebuck is an unpublished District Court opinion, right? I believe that is correct, Your Honor. Right. So it's, the District Court here would follow it only to the extent that its reasoning was persuasive. It was not controlling authority here. Why do you think that it should indeed apply to private parties and not be limited to insurers? Because your adversary cites a number of cases to support its argument that the principle applies only to insurers. So all of the cases that my adversary cited and the District Court cited are very different. None of them, first of all, required a jury trial to assess covered versus non-covered claims. But that's a different question, right? Not really, Your Honor, with due respect, because when you have a complaint with allegations within the scope of the indemnity and without the scope of the case that has been applied in Illinois law, the indemnitor has to defend the entire lawsuit. The cases that the District Court cited didn't involve mixed-allegation complaints. They involved a very different situation, Your Honor, those cases where there was a private indemnity for a very limited situation. For example, the indemnitor only indemnified for its own negligence, okay? And, for example, the finer food case that the District Court cited, it was a finer food  Well, but that — I mean, the reason for that is that in private indemnity context, there's — these are construed as contracts, strictly, because, like here, there's a contract, there's a provision, and then there's a carve-out. And so we have to — the Illinois courts, it seems like, have said that they construe it generally, favorable to the insurer. And so why would that not apply — why would that insurer's policy context apply to private contracts? I mean, I'm looking for the reason here. I understand there's a little bit of tension in the cases, and we can get into, you know, distinguishing the procedural posture of different facts, but why does the rationale not work here? Because the rationale is not all-encompassing. That rationale only involves the cases in a limited situation. And that limited situation is where the indemnity itself is limited. And so the courts, in those cases that were cited, looked at the allegations of the complaint, but they looked at the facts behind the allegations to see if those allegations were proper. Isn't that the case here? You have an indemnity in 93, and then you have a limitation in 2004, and there's, you know, a question about where the line is. Not at all, Your Honor. And the reason is because the indemnity in 1993, it's a no-fault indemnity. If pollution is off of the BP terminal, Exxon had to indemnify claims regardless of whose fault that was. It's a no-fault indemnity, unlike the only-for-negligence indemnities in these cases. More importantly, Your Honor, the 2004 agreement only released claims where third parties sought remediation, sought BP to remediate contamination. It did not at all touch upon claims of personal injury or property damage. I want to talk, practically speaking, about this. If you look at these complaints, these civil complaints, there were 21 or 22, they were lengthy complaints. One of them was 497 paragraphs. In each of the — for each plaintiff, each plaintiff — there were 200 plaintiffs in one of the cases. Each of them said, we are seeking damages, and that's it. And that's squarely within the indemnity. The addendum clause, the prayer for relief only sought damages, there was one paragraph in the entire complaint which said, we seek injunctive relief. And all it said is, plaintiffs seek injunctive relief as allowed by law and required by justice. So these cases were overwhelmingly for personal injury and property damages. And, Your Honor, I should have mentioned that actually injunctive relief in seven years of litigation was never even sought. So based on that one — one sentence, one paragraph in a lengthy complaint, a jury trial was required to parse through — to parse through all of the — all of the time records. It is — Can I ask you a question? Yes, of course. Since I'm not familiar with Illinois law, so this was an education for me, but you cited the Sears-Robach case, and as Judge Radji pointed out, that is a nonpublished opinion or decision. Is that correct? Yes, Your Honor. And is that — is that also not one that's within the context of insurance law? No. No, it's not, Your Honor, and that's an important distinction. There are two parts to that case. In Exxon's brief, they say it's only insurance law. That was a case between two private parties, or part of it, between Huffey and — and Sears-Robach. And the part that I cited was that private indemnity language. There are no cases, Your Honor — Your Honors, in — in Illinois at all which provide for a jury trial, which is what the Court did here. Every case looking at the duty to defend looks at it by the allegations of the complaint. That — that — that's — that's — that's what — that's what's important. So what we did here, we — I'm sure my adversary is going to say there was a jury trial, and we lost that jury trial, and that's — that's, of course, true. But we had many issues with the jury trial. Why is it jury trial? I mean, isn't the question whether the mixed-allegation rule is something we would apply to a private — that Illinois courts would apply to a private indemnity agreement as opposed to an insurance policy? Absolutely. Absolutely. But, Your Honor, there are no cases cited by anybody saying that if you have a private indemnity situation, you should have a jury trial to parse the time records after the underlying case is litigated. That, Your Honor, would not only be contrary to every bit of Illinois law which says you look at the allegations of the complaint, but it would incentivize indemnitores like Exxon to refuse to provide an indemnity, to go through the whole underlying complaint knowing that this issue will be before a jury who likely won't have the time records to decide which was within or without the scope. Again, it's the allegations of the complaint that govern here. Your Honors, I would also say that — Your time is running out, but I have a question about appealability here. So your opening recites Dupre and then has a parenthetical that says that legal issues merge into the final judgment on a reviewable on appeal. And that's not really an argument. It's a citation with a parenthetical that sort of alludes to the possibility of an argument. Why isn't this forfeited? This is — Exxon's brief talks about that this is not appealable because of factual issues. Each of those factual issues were the factual issues of a trial that shouldn't have happened in the first place. We are appealing not from the trial. We're appealing from the summary judgment issue, the summary judgment order. The facts in summary judgment are all undisputed. There was a 1993 indemnity. There was a complaint. That complaint had allegations clearly within the scope of that 1993 indemnity. And under the law, the duty to defend is determined based on the allegations of a complaint. There is nothing, Your Honors, in the — Even if you subsequently lose a trial on the covered claims, you still have got this legal issue, as you view it, of whether these so-called uncovered claims are in fact covered under Illinois law based on the complete defense rule. Correct, Your Honor. There shouldn't have been a trial. It should have been decided in summary judgment on a legal issue. The reasoning of the Sears-Roba case, whether unpublished, it makes sense. So I hear your answer to be that it's purely legal, and even though the forfeit in your opening brief is, you know, it's clear enough that we should address it that way, not on a sort of flip-flop. Yes, Your Honor. And we also briefed — I see my time is about — is running out. We also briefed, Your Honors, the fact that we think that the district court used the wrong standard for judging our legal fees, the market approach. Judge Posner in the — It wasn't clear to me that that was — that the standard you attributed to the district court was, in fact, the standard it applied. I'm sorry, Your Honor. I missed that. You say the district court applied a particular standard, and it was wrong. It wasn't clear to me that that was — that the district court applied the standard you attributed to it. It seemed to me the district court did apply the correct standard to the question of attorneys' fees being covered under the agreement. Do you want to — do you want to tell me why you think the district court applied the wrong standard? Yes, Your Honor. So the district court applied the lodestar standard. The lodestar standard, of course, is used in a fee-shifting statute or a fee-shifting contract provision. In both of those situations, what's envisioned is you have the entire case go on, and the winner can get legal fees in the appropriate circumstance. In our situation, in contrast, Your Honor, there was a breach of an underlying duty to defend right at the beginning of the case. And what the market approach has said, and it's been adopted by Illinois State courts and Illinois Federal court, what the market approach says is when you have an indemnitor like Exxon who breaches its duty to provide a defense at the beginning, BP should not be required to pay its cost of defense, number one, and then to have to prove the reasonableness of those costs. The fact that they were paid in the ordinary course of business shows that they're reasonable. Again, lodestar is for fee-shifting situations where much difference where there's a — there's a breach. So, Your Honor. Thank you very much. So you reserved, Mr. Krupperman, some time for rebuttal. I did. Thank you, Your Honor. I appreciate it. We'll hear from Mr. Tripp. May it please the Court. To pick up on some of the questions, if I could start with the extremely unusual posture of this case in reviewability. Right. This is a case where we had a trial. We won a defense verdict on breach. There's no challenge to the instructions on breach, the sufficiency of the evidence, and they haven't renewed the challenge to the denial of the motion for a new trial. That really should just be the end of the road. If I could like to make three points about why. So, first, picking up on just the waiver point that you were asking about, Judge Park. I mean, they're asking you to open a circuit split with the American Builders decision from the 11th Circuit on the obligation. Circuit split is not a reason not to consider our jurisdiction. So what's the second reason? Well, if I could, I think the waiver point, I think this is actually quite important, right? This court needs to establish in their opening brief that this court has jurisdiction to provide the relief that they're seeking and to explain why. And it's just totally missing from their opening brief. They don't have any argument for why this is a purely legal denial of summary judgment. The words purely legal don't even appear in the brief. And if I could, I want to actually zero in on the reviewability question on the district court's decision denying summary judgment in this case, and in particular denying it on breach, which is how we won at trial. BP has not said a word today about breach because they have no answer to this. What the district court said, this is in the special appendix at 28 to 29, is after rejecting his arguments about insurance law, saying this is not an insurance case, it went on to say that even if the arguments about insurance law were correct, the motion would still fail. And it said that, and this is a quote, that reasonable minds might differ as to the inferences to be drawn from the relevant evidence. And so that is clearly a factual dispute. And the district court said similar things also about the record on damages. So this is a case that needed to go to trial. We had a trial on breach. BP put in almost no evidence on breach. It was incredibly thin. There were line in their appellate papers on an exchange of letters in 2006 and 2007. Those letters didn't even go into the trial record. The trial record supersedes the summary judgment record. And so the denial of summary judgment is a non-appealable interlocutory order. That is just the core of Ortiz. You don't get to circumvent a terrible standard of review after a jury trial by pointing back to the decision to send the case to trial. If I could, maybe two points on the merits. I think, one, the first is this is not, obviously not an insurance case. And, in particular, BP has not identified any case with a set of contracts that's even remotely like this, right? This is too — May I bring you back about 30 seconds? Yeah. So are you suggesting then that if the district court had not provided this independent ground to deny summary judgment, then the question of our appellate jurisdiction to review the denial of summary judgment would be a real one? That is, you wouldn't have this argument against jurisdiction? Well, I think the district court said that there were at least two places where there were factual disputes. It was both on breach and also about the amount of damages. So I think there would need to be a trial on both. And I think this actually comes to some part of what makes this case so unusual, is that they're the plaintiff. They're seeking money damages. And so for them to get summary judgment, they need their argument to summary judgment on duty, breach, causation, and harm to all be purely legal. And they have legal arguments, I admit, on maybe like one and a half of those elements, but not all the way through. And so this is a case that needed to go to a trial. In particular, on breach, the district court has, in its order denying the motion for a new trial, zeroed in on the evidence for basically the lack of evidence and why the jury was well within its rights to find that there was no breach at all. And BP has forfeited any challenge to that. And they're appellate brief there. They're not asking for a new trial. Was the analysis that even if we agree with BP, the district court agrees with BP, as to Illinois law and the complete defense rule, I determine that there's still a factual dispute with respect to breach? That's right. Is that what it was? That's right. And then on just the merits of their arguments about Illinois law, two points on that. One, of course, none of these cases have a contractual situation that's even remotely like this, where you have a settlement between two sophisticated parties that concludes a defense and indemnity obligation. That's in 1993. And then a subsequent settlement in 2004, which BP hardly mentions, with very broad language releasing both the indemnity obligation and the defense obligation itself as to any claim that even relates to remediation. And the critical point here is that there was extensive trial testimony, extensive record testimony talking about how the demand for remediation was incorporated into each and every count of each and every complaint brought by each and every plaintiff. And it does, indeed, demand remediation. How do you address the Sears and Kmart cases? I mean, they do seem to be in tension with what I think is the broader principle that private indemnity insurance is different, but those do seem to go against it. I think maybe two points. One is that the cases that have applied these principles to non-insurers have done it in an unexamined manner without asking the question of whether that body of law should apply to non-insurers. And every time an Illinois court has asked that question, the answer has been no, that there is this fundamental distinction. That's in Dominic Finder Foods. That's in published appellate decision from the Illinois courts. And then I think maybe actually the more fundamental one, that they rely on a case called Wilda. And what Wilda actually says is it, quote, serves no useful purpose to attempt to analyze or reconcile the numerous cases interpreted in indemnity clauses since each individual case depends upon the particular language used and the factual setting of the case. And I think just respectfully BP has no answer to the language of the 2004 release that says that BP releases Exxon from, quote, any and all manner of action, cause of action, suits, debts, dues, sums of money, covenants, contracts, agreements, or promises whatsoever relating to responsibility for remediating contamination. And so I think, candidly, they have the rule exactly backwards. The question isn't does it relate to damages under the 1993 agreement. The question is whether it relates to remediation. Because if it does, the promise to defend has been unambiguously released. And there was extensive, extensive testimony at trial that each and every one of the claims related to remediation. And there was also, I think I submit as the district court explained in this post-trial ruling, just a failure of proof on breach. Is this the only litigation of its sort in the country that is between these, this dispute between BP and Exxon? Or is there more going on here? I mean, there are, these are, you mean, even the settlements in this agreement are parts of a sort of larger set of disputes.  I'm not. Yes, that's my question. I think yes is the answer. Okay. Yeah. All right. Thank you. If there are no further questions, we're asking the court to affirm. Your Honor, the factual, this was a purely legal appeal. The factual question. It was or wasn't? This is a purely legal appeal. Sorry. But the four hundred question is that you didn't raise this in your opening brief. I believe we did, Your Honor. I believe we talked about this. This is just a legal issue. The facts are undisputed because it is based on the actual. Well, the implied brief spends four or five pages on it. That is an argument. Right. But I don't know that a parenthetical counts. Well, we also raised this as a standard in the first, in our brief, and we talked about the fact that this is, all the facts here are undisputed. The facts that my opponent was talking about are all facts due to a trial that should never have been held in the first place. If you look at the allegations of the complaint. And given the unusual posture here, I mean, it does seem procedurally, it seems important to sort of explain why we have jurisdiction to go back to the summary judgment motion after the trial. Your Honor, I thought we did because we tried to make this as simple as possible based on the undisputed facts and the allegations of the complaint the district court erred in having a jury trial, and that's where all the facts come in. If I may quickly, Your Honors, on the 2004 agreement which my adversary raised, that agreement only relates to remediation. The district court rejected this very argument, and they don't even mention it. And, Your Honors, if the 2004 agreement vitiated the 1993 defense and indemnity, as Exxon now says, why then did Exxon actually indemnify BP in connection with settling the underlying lawsuits? In other words, they honored the indemnity, admitting that it exists, but now they're trying to claim the broader duty to defense somehow was vitiated. I did not hear in my opponent's discussion any case where it required a jury trial, just like the district court did, to parse through records. None exists. It's all from the allegations of the complaint. Nor did Exxon raise any substantive reason why the complete defense rule should not apply in a private indemnity situation. I will say, Your Honors, that one might say that an insurer has more of an incentive to look behind the facts and to assess risk. This was Exxon's own oil spill. They knew exactly what they were doing when they got a million dollars from BP for this defense and indemnity. So, Your Honors, this is exactly a situation where it should be covered by a complete defense rule because they issued this clear defense and indemnity knowing exactly what they were doing. This Court should follow the Sears case because whether unpublished reasoning makes sense. Maybe you've already mentioned this, but Mr. Tripp described the district court's decision as having denied, as a separate and independent basis, summary judgment on the breach, on the fact that there are factual issues related to the breach. The factual issues, Your Honor, were all because of the – because she did not apply the complete defense rule. Had the complete defense rule been applied just as we asked for at summary judgment, there would have been no factual issues. The undisputed issues are what the complaints alleged, which is clear. They allege personal injury and property damages for pollution outside the BP terminal. And that's exactly what the defense and indemnity obligation was for. So it's a purely legal issue. Thank you, Your Honors.